UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| Patricia Diaz, | § | |
|         Plaintiff, | § | |
| | § | CASE NO. 5:24-cv-1323 |
| | § | |
| v. | § | |
| | § | |
| Clarity Services, Inc.; | § | |
| | § | |
| | § | |
|         Defendant. | § | |

## PLAINTIFF'S COMPLAINT

COMES NOW Plaintiff **PATRICIA DIAZ** ("Plaintiff"), an individual, based on information and belief, to allege as follows:

### INTRODUCTION

1. This case arises under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681e(b), 1681i(a)(2)(A), 1681i(a)(4), and 1681i(a)(5)(A). Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendant in connection with their inaccurate, misleading, or incomplete reporting of Plaintiff's debts.

2. Defendant Clarity Services, Inc. ("Clarity") is not reporting Plaintiff's Acima Digital ("Acima") account accurately as discharged in bankruptcy.

3. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system and unfair credit reporting methods undermine the public confidence that is essential to the continued functioning of the banking system.

4. A pervasive and fundamental misunderstanding presently thrives in the United States regarding the long-term impact that filing a consumer bankruptcy has on the consumer's creditworthiness. Specifically, consumers tend to believe that since a bankruptcy can be reported on their credit report for ten (10) years, their creditworthiness will be ruined for the same length of time. This is not true.

5. The *majority* of consumer debtors file a consumer bankruptcy to *raise* their FICO

Score and remedy their poor creditworthiness.

6. In fact, it is possible for consumer debtors to obtain a 700 FICO Score as soon as twelve (12) months from filing a consumer bankruptcy (Chapter 7 or Chapter 13).

7. Creditors and lending institutions are aware of the misconception that filing a consumer bankruptcy destroys the consumer's creditworthiness of ten (10) years; however, to perpetuate this bankruptcy myth, creditors intentionally and routinely ignore both industry standards and FCRA requirements for accurately reporting bankruptcies, as well as the debts included in those bankruptcies, to keep consumers' credit scores low and their interest rates high.

8. Creditors know that deviating from recognized credit reporting standards and FCRA requirements will make it difficult for consumers to raise their credit scores and improve their creditworthiness.

9. This was not the intent of Congress when it enacted the Fair Credit Reporting Act and the Bankruptcy Abuse Prevention and Consumer Protection Act.

## JURISDICTION & VENUE

10. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

11. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, 1367, and 15 U.S.C. § 1681.

12. This venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

13. Plaintiff alleges that, for purposes of establishing residency under 28 U.S.C. § 1391(b)(1), the named Defendant conducts sufficient business within the forum state and this Court has personal jurisdiction over the Defendant under 28 U.S.C. §§ 1391(c)(2) and 1391(d).

## GENERAL ALLEGATIONS

14. Plaintiff alleges that the Acima account was included in her Chapter 7 bankruptcy filing in that the debt occurred pre-petition and was subsequently discharged.

15. Despite the fact the Acima account was discharged, it is reporting on Plaintiff's Clarity credit report with a charge off payment status, an outstanding current balance, and a current past due amount; all of which is patently incorrect and misleading.

16. Plaintiff alleges that Clarity is not reporting any of the Acima account correctly as discharged in bankruptcy.

17. Plaintiff alleges that it is patently incorrect and misleading for a debt which was

discharged in bankruptcy to report as a charge-off, with a balance, or a past due amount.

18. Plaintiff alleges that the Defendant is familiar with FCRA requirements and subscribes thereto.

19. Plaintiff alleges that the Defendant understands that deviation from the FCRA requirements or credit reporting industry standards can, and often does, result in the denial of credit, higher interest rates, and prompts a negative inference that would not be drawn if the data were reported in accordance with the recognized standards.

20. Plaintiff alleges that Defendant's actions alleged herein were committed knowingly, intentionally, and in reckless disregard of the unambiguous meaning of the FCRA, regulatory guidelines on accurate reporting, and credit reporting industry standards to purposefully undermine Plaintiff's ability to repair her Credit Score.

21. In the alternative, Plaintiff alleges that the Defendant's actions were the result of negligent policies, procedures, and an objectively unreasonable interpretation of the FCRA, all which inevitably led to inaccurate, misleading, or incomplete credit reporting.

## FACTUAL BACKGROUND

22. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.    Clarity Services, Inc.**

23. Clarity Services, Inc. is a nationwide consumer reporting agency ("CRA") which is owned by Experian Information Solutions, Inc. ("Experian").

24. Clarity specializes in alternative financial services data by primarily servicing the needs of subprime, payday, and other small-dollar, short-term lenders.

25. Clarity produces credit reports to these subprime lenders that includes data gathered from Experian, as well as other specialty CRAs.

**B.    Bankruptcy Credit Reporting Industry Standards & Consumer Information Indicator**

26. When a consumer files bankruptcy, certain credit reporting industry standards exist.

27. Certain data is regularly expected and calculated by lenders and employers when determining a consumer's creditworthiness.

28. The Consumer Information Indicator ("CII") is a critical field that indicates a

special condition that applies to a specific consumer.

29. It is the credit reporting industry standard to report a very specific CII upon the filing of a consumer bankruptcy.

30. The CII Code "E" denotes that a Chapter 7 bankruptcy has been discharged.

31. The CII field is a critical field for consumers as it directly relates and impacts a consumer's creditworthiness.

32. The lack of a CII reported makes it appear that a consumer has not addressed outstanding debt obligations through the bankruptcy process.

33. Furthermore, the lack of a CII reported suggests that creditors are free to collect against a consumer as an individual, or that no stay exists to prevent in personam collection activity.

34. Failure to report the correct CII indicator will prompt those making credit decisions to draw a more negative inference than if the appropriate CII indicator were reported.

35. The FCRA permits a bankruptcy to be reported for ten (10) years from the date the bankruptcy was filed.

36. A consumer's creditworthiness is directly related to the date on which a petition is filed and acknowledged.

37. The bankruptcy's impact on a consumer's creditworthiness lessens with the passage of time.

38. Accordingly, the failure to reference the bankruptcy filing (CII field) and/or the correct petition date results in a lower creditworthiness, which in turn causes credit decision makers to draw a more negative inference regarding a consumer's creditworthiness.

**C.    Plaintiff's Debts were Discharged Pursuant to her Bankruptcy**

39. Plaintiff filed a voluntary petition for Chapter 7 bankruptcy on April 30, 2024, in order to repair her creditworthiness and Credit Score.

40. Plaintiff listed Acima as holding an unsecured claim in Schedule E/F.

41. The Chapter 7 Trustee's Report of No Distribution was entered on May 28, 2024.

42. Plaintiff's bankruptcy was discharged on August 1, 2024.

43. Plaintiff's obligation on the Acima account was discharged on August 1, 2024.

**D.    Plaintiff's Credit Report Contains an Inaccurate and Adverse Tradeline, which Plaintiff Disputed to no Avail**

44. On August 5, 2024, Plaintiff ordered a Clarity credit report to ensure proper reporting by Plaintiff's creditors (the "August 5 Credit Report").

45. Plaintiff noticed adverse tradelines in her August 5 Credit Report, reporting inaccurate, misleading, or incomplete information that did not comply with the FCRA standards.

46. Plaintiff then disputed the inaccurate tradelines regarding the Acima account via certified mail to Clarity on or about September 20, 2024 (the "Dispute Letter").

47. Plaintiff's Dispute Letter specifically put Clarity on notice that Plaintiff filed Chapter 7 bankruptcy, received a discharge, and her account should be updated.

48. Plaintiff's Dispute Letter also detailed what was perceived to be problematic about the account, addressing the tradeline individually.

49. Plaintiff requested that any derogatory reporting be updated to ensure accuracy and completeness of the accounts as required by the FCRA.

50. Plaintiff is informed and believes that Clarity received Plaintiff's Dispute Letter and, in response, failed to investigate and failed to send the dispute to Acima, as the data furnisher, via an ACDV through e-OSCAR or by any other means.

51. On November 11, 2024, Plaintiff ordered another Clarity credit report to determine if her accounts were updated.

    a.    **Inaccuracy – Acima**

52. Despite actual knowledge, Clarity continued to report Plaintiff's Acima account, ending in 2998, with a current payment status of "Charge-Off", a current balance of "$5,567", a current past due amount of "$445", a current next payment amount of "$445", and without notation of the bankruptcy discharge. This tradeline is patently inaccurate as the account was discharged in bankruptcy in August 2024.

53. Plaintiff alleges that Clarity did not investigate whether Plaintiff filed for bankruptcy.

54. Clarity did not update the Acima tradeline to reflect that Plaintiff obtained a discharge in bankruptcy.

55. Clarity failed to provide notice to Acima that Plaintiff was disputing the inaccurate and misleading information, and thus it failed to conduct a reasonable investigation of the information as required by the FCRA.

56. Based upon Plaintiff's dispute, Clarity should have known that Plaintiff received a discharged in her bankruptcy proceedings.

57. The most basic investigation would include a simple review of its reporting in light of the fact that Plaintiff filed a Chapter 7 bankruptcy and received her discharge in order to determine if the reporting complies with the maximum possible accuracy and completeness standard of the FCRA.

58. Plaintiff alleges that Clarity did not review if its reporting complied with the unambiguous language of the FCRA, regulatory guidelines on accurate reporting under the FCRA, or publicly available records concerning Plaintiff's bankruptcy status.

59. If Clarity reviewed such standards, Clarity would have seen that its reporting was not in compliance and was therefore patently inaccurate or incomplete.

60. Clarity should have updated the Acima tradeline to CII Code "E", or otherwise updated the account in order to reflect the debt was discharged in Plaintiff's Chapter 7 bankruptcy, and removed the charge off payment status, past due amounts, next payment amounts, and balance.

61. By continuing to report Plaintiff's account as described herein, it incorrectly appears to third parties viewing Plaintiff's credit report that the account was not discharged in bankruptcy, which is inaccurate.

62. As Plaintiff received her discharge and this debt is no longer owed, the reporting on the account is misleading.

63. The reporting is misleading as the lack of any bankruptcy notation further makes the account appear as if it is still outstanding, past due, charged off, and not discharged.

64. The term "charge-off" means an account is closed, although the debt is still owed and may be sent to collections. By reporting Plaintiff's account as described herein above, it appears to third parties viewing Plaintiff's credit report that the account was not discharged in bankruptcy, which is patently incorrect and misleading.

65. The incorrect charge off payment status, past due amount, and balance reported by Clarity is lowering Plaintiff's credit score and creditworthiness, which adversely affects Plaintiff's ability to obtain credit.

66. The lack of investigation and reporting of inaccurate and incomplete information by Clarity is unreasonable.

**F.      Damages**

67.     Plaintiff pulled the credit reports at issue at a cost for access to the report, after the dispute process, specifically for the sole purpose of verifying that the inaccuracies were fixed.

68.     As a result of the incorrect reporting, Plaintiff has incurred out-of-pocket expenses, and has also suffered emotional harm and excessive stress resulting in doubt as to the effectiveness of the Bankruptcy Code, the Fair Credit Reporting Act, and the power of this Court to preserve and perpetuate a fresh start as intended by Congress.

69.     Plaintiff has been denied credit and is unable to rebuild her credit based on the inaccurate reporting by Clarity on the Acima account. Further, Plaintiff's diminished creditworthiness, resulting from Clarity's inaccurate reporting, has caused her to fear additional credit denials and abandon her intentions to apply for certain credit.

70.     Additionally, Plaintiff has suffered concrete and imminent harm to her creditworthiness. Plaintiff's Clarity report showed numerous third parties had procured her credit information in the period prior and subsequent to the reinvestigations. Moreover, prospective creditors who wished to make a firm offer of credit or insurance to Plaintiff may have excluded her from lists of consumers who received such offers, or else would have factored the inaccurate and confusing information into the terms of any firm offer they decided to extend to Plaintiff. Thus, the inclusion of derogatory information presents an imminent, material risk of harm Plaintiff's creditworthiness has been, and continues to be, damaged by Clarity's reporting false, inaccurate, and misleading credit information.

71.     Clarity's actions, as alleged herein, are in direct violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681.

## FIRST CAUSE OF ACTION

### (Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))

### (Against Defendant)

72.     Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.      Clarity Failed to Assure Credit Reporting Accuracy**

73.     Clarity violated 15 U.S.C. § 1681e(b) by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and the credit files it published and maintained concerning Plaintiff.

74. Clarity's parent company, Experian, as part of a prior class action settlement, agreed to proactively report pre-Chapter 7 accounts which were discharged in the consumer's bankruptcy as included in bankruptcy. *See Terri N. White v. Experian Information Solutions, Inc.*, CV 05-1070 DOC (MLGx) (C.D. Cal. Complaint filed Nov. 2, 2005).

75. As a part of the *White* settlement, Experian agreed that it would report pre-bankruptcy tradelines of certain types (revolving, line of credit, open, or indeterminable) in accordance with the "Agreed Bankruptcy Coding." Settlement Order, pgs. 21:24-22:28.

76. The "Agreed Bankruptcy Coding" means these tradelines are to be reported as "discharged" and updated to reflect a zero-balance, or to indicate in some way that no debt is due or owing. Settlement Order, pgs. 6:25-8:9.

77. Based on the *White* settlement, Clarity knew what constituted reasonable procedures surrounding reporting of accounts discharged in bankruptcy.

78. Clarity failed to report the Acima account using reasonable procedures, including but not limited to the procedures its parent company expressly agreed to adopt in *White*.

79. Had Clarity maintained reasonable procedures to assure maximum accuracy, it would have never reported the Acima account as described herein.

80. Clarity knew, or should have known, (1) that the Acima account was discharged in bankruptcy, (2) that the tradeline should reflect the discharge, and (3) that the account should not have been reported with a current charge off payment status, current past due amount, current next payment, or a current balance as the debt was discharged. Further, Clarity knew, or should have known, that this inaccurate and incomplete tradeline does not reflect *maximum possible accuracy and completeness* as required by the FCRA.

81. Congress specifically recognized the "elaborate mechanism developed for investigating and evaluating credit worthiness, credit standing, credit capacity, character, and general reputation of consumers." *Nayab v. Capital One Bank (USA), NA*, 942 F. 3d 480, 492 (9th Cir. 2019). The investigation and evaluation of Plaintiff's creditworthiness, credit standing, credit capacity, character and general reputation as a consumer are all damaged by the inaccurate reporting Clarity allowed.

82. As a result of Clarity's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: damage to reputation, embarrassment, humiliation, dissemination of inaccurate information, diminished credit, and other mental and emotional

distress.

83. Clarity is reporting Plaintiff owes a debt that she does not actually owe, thereby damaging her credit score and creditworthiness.

84. Clarity's reporting is particularly aggravating of Plaintiff's damages because the inaccurate reporting damaged Plaintiff's creditworthiness, which she is attempting to rebuild after bankruptcy.

**B.     Willful Violations**

85. Clarity's violations, as described herein, were willful; specifically, Clarity has intentionally and purposefully set up a system where inaccuracies are not only probable, but inevitable.

86. Clarity regularly, as a policy, ignores disputes by consumers and fails to perform even a basic investigation regarding the disputes. Additionally, Clarity regularly fails to forward disputes to data furnishers, thereby frustrating the entire dispute process.

87. To the extent Clarity does send consumer disputes, it sends these disputes to employees who do not live within the continental United States to hide or subvert a consumer's liability to confront the individual(s) directly responsible for approving accurate reporting.

88. Clarity's employees receive little to no training concerning how to accurately report consumer debt.

89. Instead, Clarity's employees are instructed to parrot whatever information a data furnisher provides regardless of whether the information is accurate.

90. Clarity's employees are regularly expected to review and approve over ninety (90) disputes per day, rendering less than five (5) minutes to review, investigate, and respond to each dispute received.

91. Clarity has intentionally set up this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.

92. As a result of Clarity's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, dissemination of inaccurate information, diminished credit, and other mental and emotional distress.

93. Clarity's violations were willful, rendering it individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

94. In the alternative, Clarity was negligent, which entitles Plaintiff to recover under 15 U.S.C. § 1681o.

95. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from Clarity in an amount to be determined by this Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## SECOND CAUSE OF ACTION
### (Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(1))
### (Against Defendant)

96. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.   Clarity Failed to Reinvestigate the Disputed Information in violation of 15 U.S.C. § 1681i(a)(1)**

97. Pursuant to 15 U.S.C. § 1681i(a)(1), Clarity was required to conduct a reasonable investigation and to delete any information that was not accurate after receiving notice of Plaintiff's dispute regarding the Acima account.

98. Thus, Clarity failed to conduct a reasonable investigation and correct the misleading and/or inaccurate statements on the account within the statutory time frame.

99. Clarity is not a passive entity bound to report whatever information a data furnisher provides.

100. Plaintiff alleges Clarity is readily familiar with FCRA requirements and credit reporting industry standards.

101. Based on the foregoing, Plaintiff alleges that Clarity can, and does, suppress inaccurate information from being reported when data furnishers provide inaccurate information.

102. Clarity, can and does, instruct data furnishers on how to properly report certain accounts from time to time upon request from a data furnisher.

103. Clarity failed to conduct a reasonable investigation because any basic investigation would have uncovered that it was not reporting the Acima account correctly.

104. Had Clarity conducted a proper investigation, it could have updated the Acima tradeline to reflect the bankruptcy discharge, removed the charge off payment status, past due amount, and balance. However, Clarity continued to report the Acima account as described herein.

105. Plaintiff alleges that Clarity did not send an ACDV or other notice of dispute to

Acima to confirm accurate reporting on its account. Despite receiving the Dispute Letter providing notice of the inaccuracies, Clarity did not delete or correct the Acima tradeline or conduct an investigation regarding the Acima tradeline.

106. Clarity, therefore, did not conduct even the most basic investigation regarding the requirements set forth in the FCRA or credit reporting industry standards, otherwise the aforementioned would have been uncovered.

107. In the alternative, if Clarity deemed Plaintiff's Dispute Letter "frivolous or irrelevant" under 15 U.S.C. § 1681i(a)(3), Clarity failed to notify Plaintiff of such determination as required by 15 U.S.C. § 1681i(a)(3)(B). As Plaintiff received no such notice from Clarity, Plaintiff alleges Clarity deemed her Dispute Letter valid, and thus triggered its obligations under 15 U.S.C. § 1681i(a)(1) and (2)(A), for which it did not comply.

## THIRD CAUSE OF ACTION
### (Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))
### (Against Defendant)

108. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.  Clarity Failed to Review and Consider all Relevant Information**

109. Clarity violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

110. Plaintiff alleges Clarity did not seek to review any of Plaintiff's bankruptcy documents, including any from PACER or any other publicly available database. Had Clarity reviewed these documents, it would have seen the Acima account was reporting inaccurately and should be reported as discharged in bankruptcy.

111. Clarity's violations of 15 U.S.C. § 1681i(a)(4) have caused Plaintiff to suffer actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

**B.  Willful Violations**

112. Clarity's violations were willful, rendering it individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

113. In the alternative, Clarity was negligent in failing to review and consider all relevant information Plaintiff submitted, which entitles Plaintiff to recovery under 15 U.S.C. §

1681o.

114. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from Clarity in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## FOURTH CAUSE OF ACTION

### (Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))

### (Against Defendant)

115. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.  Clarity Failed to Delete Disputed and Inaccurate Information**

116. Clarity violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

117. Clarity's violations of 15 U.S.C. § 1681i(a)(5)(A) have resulted in Plaintiff suffering actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

**B.  Willful Violations**

118. Clarity's violations were willful, rendering it individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

119. In the alternative, Clarity was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

120. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from Clarity in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## PRAYER FOR RELIEF

121. WHEREFORE, Plaintiff prays for judgment as follows:
   a. For preliminary and permanent injunctive relief to stop Defendant from engaging in the conduct described above;
   b. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n;
   c. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n;

    d.  Award attorneys' fees and costs of suit incurred herein pursuant to 15 U.S.C. §§ 1681n and 1681o;

    e.  For determination by the Court that Defendant's policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, *et seq.*; and

    f.  For determination by the Court that Defendant's policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

## DEMAND FOR JURY TRIAL

122.    Plaintiff hereby demands trial of this matter by jury.

Respectfully submitted,

**SCHUMACHER LANE PLLC**

Dated: November 15, 2024

/s/ *Joshua B. Lane*
Joshua B. Lane
Texas Bar No. 24092665
josh@schumacherlane.com

/s/ *Kyle Schumacher*
Kyle Schumacher
Texas Bar No. 24106831
kyle@schumacherlane.com
P.O. Box 558
Spring Branch, TX 78070
210-541-2154 ph
210-783-1383 fax
Attorneys for Plaintiff